## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 6:23-CV-296** |
| | § | |
| **REAL PROPERTY LOCATED AT** | § | |
| **15712 GULF BOULEVARD** | § | |
| **REDINGTON BEACH,** | § | |
| **PINELLAS COUNTY,** | § | |
| **FLORIDA, INCLUDING ALL** | § | |
| **BUILDINGS, APPURTENANCES,** | § | |
| **AND IMPROVEMENTS THEREON** | § | |
| **Defendant.** | § | |

## <u>VERIFIED COMPLAINT FOR FORFEITURE</u>

In accordance with Fed. R. Civ. P. Supplemental Rule G(2), the United States of America, Plaintiff, brings this complaint for forfeiture and alleges as follows:

## NATURE OF ACTION

1.      This matter is an *in rem* action brought against the following Defendant Real Property located at 15712 Gulf Boulevard, Redington Beach, Pinellas County, Florida:

> Portion of Lot (s) 5 and 6, Block 10, First Addition to Lone Palm Beach, according to the map or plat thereof, as recorded In Plat Book 20, Page(s) 67, of the Public Records of Pinellas County, Florida, described as follows: Commence at the most Northerly Corner of said Lot 5; thence along the Northwesterly Boundary line of said Lot 5, South 36°59'00" West, 7.00 feet to the existing Southwesterly Right-of-way line of Gulf Boulevard, thence along

said Right-of-way line, South 53"01 '00" East, 45.00 feet for a Point of Beginning; thence from said Point of Beginning the following four (4) Courses: 1) Continue along said Right-of-Way line, South 53"0TO0" East, 45.00 feet; thence 2) Leaving said Right-of-Way line, South 36° 59W West, 173.87 feet; thence 3) North 53"22'03" West, 45.00 feet; thence 4) North 36°59'00" East, 174.14 feet, to the aforementioned Point of Beginning. a/k/a 15712 Gulf Blvd. Redington Beach Florida.

## JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345 and over an action for forfeiture pursuant to 28 U.S.C. § 1355(a).

3.      The Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in the Eastern District of Texas.

4.      Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in the Eastern District of Texas.

## FACTUAL BACKGROUND

## Background on IRS Forms and Frivolous Arguments

5.      Each year, taxpayers have the option of either mailing their federal income tax return to the IRS or filing their tax return electronically (e-file). A taxpayer can prepare and file their electronic tax return themselves using available software or hire a return preparer to prepare and

electronically file the tax return. The software company provides technical support to the return preparer and monitors the returns that are filed through its software system.

6.      Form 1041, U.S. Income Tax Return for Estates and Trusts (Form 1041), is an income tax return required to be filed by certain estate and trust entities. When a Form 1041 is e-filed with the IRS, Form 8453-FE, U.S. Estate or Trust Declaration for an IRS e-file Return (Form 8453-FE), is required to be electronically filed as an attachment to the Form 1041.

7.      Original Issue Discount (OID) is a type of interest that is not payable as it accrues. OID is the excess of the stated redemption of the deposit, bond, or other financial obligation at maturity over its issue price. OID is taxable as interest over the life of the obligation and must be included in the holder's gross income each taxable year that the obligation is held. Certain obligations are excepted, including United States savings bonds, short-term obligations (less than one year), and tax-exempt obligations.

8.      Investment income, including OID, is generally not subject to federal income tax (FIT) withholding. However, OID may be subject to backup withholding of 28% for tax year 2017 (or 24% for tax years 2018 through 2023) of the amount the taxpayer received for OID. Backup withholding may apply if: (1) the payee fails to furnish his or her tax identification number (TIN); (2) the payee fails to certify to the payer, under

penalties of perjury, that the TIN provided is correct; (3) the IRS notifies the payer to impose backup withholding because the payee furnished an incorrect TIN; (4) the IRS notifies the payer that the payee is subject to backup withholding; or (5) the payee fails to certify to the payer, under penalties of perjury, that he or she is not subject to backup withholding.

9.     Form 1099-OID, Original Issue Discount (Form 1099-OID), is a Form 1099 series information return to report the OID of holders of OID obligations, including certificates of deposit, time deposits, bonds, debentures, bonus savings plans, and Treasury inflation-indexed securities, having a term of more than one year. Form 1099-OID is generally required to be filed with the IRS by certain financial institutions when the total OID for a holder or depositor is at least $10.00, or when any amount of Federal Income Tax (FIT) is withheld and not refunded to the holder or depositor, in a calendar year.

10.     On March 22, 2004, the IRS published Internal Revenue Bulletin: 2004-12. Internal Revenue Bulletin: 2004-12 included a discussion of Revenue Ruling 2004-31 on frivolous tax returns and meritless "removal arguments." Revenue Ruling 2004-31 emphasizes to taxpayers that there is no law, court decision, or other authority that permits a taxpayer to remove themselves from the federal tax system to avoid otherwise applicable taxes.

11.     According to Revenue Ruling 2004-31, removal arguments and schemes are loosely related and take a variety of different forms. In some variations of the removal argument, individuals claim that the government commits a fraud when it attempts to collect debts, including tax debts, and that this purported fraud allows individuals to "chargeback" debts that the government purportedly owes to these individuals to eliminate any liability to the government. Other individuals argue that they may reclaim, or "chargeback," their own value from the government as a result of the government's purported wrongful conduct and then use that value to pay the individual's debts. Participants in removal schemes often attempt to offset, collect, or "redeem" their asserted claims against the government by using or filing false liens, bills of exchange, and various Uniform Commercial Code (UCC) forms, or by relying on misinterpretations of federal laws and the UCC. Arguments that individuals may be removed or redeemed from the federal tax system, or may "chargeback" their debts to the government, have no merit and are frivolous.

12.     On April 4, 2005, the IRS published Internal Revenue Bulletin: 2005-14. Internal Revenue Bulletin: 2005-14 included a discussion of Revenue Ruling 2005-21 on frivolous tax returns and use of the "straw man" theory to avoid tax. Revenue Ruling 2005-21 emphasizes to taxpayers that they cannot avoid income tax on the theory that the government has created

a separate and distinct entity, or "straw man," in place of the taxpayer and that the taxpayer is not responsible for the tax obligations of the "straw man."

13.     According to Revenue Ruling 2005-21, the "straw man" claim is premised on the erroneous theory that most government documents do not actually refer to individuals. Users of the "straw man" theory falsely claim that only documents using an individual's name with "standard" capitalization, i.e., lower-case with only the beginning letters of each name capitalized, are legitimate. These individuals argue that the use of the individual's name in all upper-case letters, which is common in some government documents, refers to a separate legal entity, called a "straw man." These individuals also argue that, as a result of the creation of the "straw man," they are not liable for the debts, including the tax debts, of their "straw man," that taxing the "straw man" is illegal or unconstitutional because the "straw man" is a debt instrument based upon the labor of a real person and is, therefore, a form of slavery, or that no tax is owed by the real individual because it can be satisfied, or offset, by money in a "Treasury Direct Account" held in the name of the "straw man."  In reality, the use of different forms of a taxpayer's name, including different spellings or capitalization, does not create a "straw man" that allows taxpayers to avoid their federal tax obligations. Claims based on "straw man" arguments, or on

similar arguments, to avoid federal tax obligations are frivolous and have no merit.

14.     In an OID scheme, filers falsely list large amounts of OID income and corresponding large amounts of withholding. Instead of listing actual OID income, the filers list a debt, including credit card debts and mortgages. The filers also falsely represent that a large amount of their OID income was withheld, and they thus claim that they are entitled to large tax refunds. One variation of the "redemption theory" (removal argument) asserts that persons can draw on a secret or "straw man" Treasury account by sending a Form 1099-OID to a creditor and the creditor can present the form to the Treasury Department and receive a full payment of the debt. The proponents of this theory appear to assert that the Form 1099-OID permits them to access their secret Treasury account for an amount equal to the face amount of the Form 1099-OID in the form of a tax refund. Persons asserting this theory often significantly overstate withholding and claim an excessive refund in an amount close or identical to the related withholding. Form 1099-OID is in no way a financial instrument. Form 1099-OID is not a legitimate method of payment of any public or private debt, and Form 1099-OID is not a means to withdraw or "redeem" money from the Treasury Department or IRS.

15.     Further variations of this frivolous Form 1099-OID theory contend that individuals may claim false withholding or tax payments on an

income tax return or purported return using another document from the Form 1099 series of information returns, including Forms 1099-C, Cancellation of Debt (Forms 1099-C), and Forms 1099-A, Acquisition or Abandonment of Secured Property (Forms 1099-A).

## The Purchase of 15712 Gulf Boulevard, Redington Beach, Florida

16.     Larry Mark Kalmowitz and Rebecca Ann Kalmowitz purchased 15712 Gulf Boulevard in Redington Beach, Florida on or about January 29, 2020. The warranty deed filed with the Pinellas County Clerk on or about February 3, 2020, identified CORPORATE HOLDINGS COMPANY, LLC (CHC) as the purchaser. A Florida Limited Liability Company Affidavit was also filed with the Pinellas County Clerk on or about February 3, 2020, which identified the Kalmowitzes as the authorized persons for CHC.

17.     A warranty deed filed with Pinellas County Clerk on or about November 30, 2022, identified CHC as grantor to the Kalmowitzes for 15712 Gulf Boulevard in Redington Beach, Florida effective December 31, 2020.

## Proceeds from Underlying Specified Unlawful Activities Are Used to Purchase 15712 Gulf Boulevard

18.     In May 2017, Larry Kalmowitz filed a Form SS-4, Application for Employer Identification Number, with the IRS for LARRY MARK KALMOWITZ ESTATE (LMK ESTATE). In January 2018, he filed a Form SS-4 with the IRS for LARRY MARK KALMOWITZ TRUST (LMK TRUST).

19.     Also in May 2017, Rebecca Kalmowitz filed a Form SS-4 with the IRS for REBECCA ANN KALMOWITZ ESTATE (RAK ESTATE). In January 2019, she filed a Form SS-4 with the IRS for REBECCA ANN KALMOWITZ TRUST (RAK TRUST).

20.     Between June 3, 2019, and February 6, 2020, the IRS received 10 e-filed, false Forms 1041 for LMK ESTATE, LMK TRUST, RAK ESTATE, and RAK TRUST for tax years including 2017, 2018, and 2019.

21.     The false Forms 1041 reported a total of approximately $48 million in fictitious interest income and approximately $48 million in fictitious FIT withheld from Forms 1099. On eight of the false Forms 1041, the fictitious interest income and FIT withheld are the same amount, or 100% of income was reported as withheld as FIT.

22.     The false Forms 1041 calculated approximately $6 million in total tax, and total refunds of approximately $42 million. Due to a flaw in the processing system that did not recognize the fraudulent nature of the claims, the IRS issued Treasury Checks for the refunds claimed on eight of the Forms 1041 for a total of approximately $24 million. The last two refunds were stopped by the IRS before Treasury Checks were issued, for a total of approximately $18 million.

23.     There were no Forms 1099 filed with the IRS by any payer for income paid to or federal income tax withheld for LMK ESTATE, RAK

ESTATE, or RAK TRUST for tax years 2017, 2018, or 2019. There were Forms 1099-INT, Interest Income (Forms 1099-INT), for LMK TRUST for tax years 2019 and 2020. The Forms 1099-INT for LMK TRUST reported total interest income of $19.00 and total FIT withheld of $4.00 in 2019, and total interest income of $25.00 and total FIT withheld of $6.00 in 2020. There were no other Forms 1099 filed with the IRS for LMK TRUST for tax years 2017, 2018, or 2019.

24.     Records from Tax Software Provider 1 show that an account registered to Larry Kalmowitz prepared 87 Forms 1099-A for a total of approximately $35.7 million in purported principal balances for tax years 2016 to 2019.

25.     Records from Tax Software Provider 1 show that an account registered to Rebecca Kalmowitz prepared 86 Forms 1099-A for a total of approximately $28 million in purported principal balances for tax years 2016 to 2019.

26.     Records from Tax Software Provider 2 show that an account registered to Rebecca Kalmowitz prepared and electronically filed the 10 false Forms 1041 for LMK ESTATE, LMK TRUST, RAK ESTATE, and RAK TRUST for tax years 2017, 2018, and 2019. The Forms 1041 were prepared with Forms 1099-OID entered as supporting the interest income and FIT withheld claimed on the Forms 1041.

27.     The IRS received Certified Mail packages containing printed copies of 2017 Forms 1041 for LMK TRUST, LMK ESTATE, and RAK ESTATE postmarked November 12, 2019, November 27, 2019, and December 2, 2019, respectively. Each package included Forms 1096, Annual Summary and Transmittal of U.S. Information Returns, and Forms 1099-OID listing LMK TRUST, LMK ESTATE, and RAK ESTATE as the payer, respectively. The Forms 1096 included the Kalmowitzes' signatures, respectively. The Forms 1099-OID included handwritten alterations to the tax year and the checkbox as "Corrected" forms for tax year 2017. Each of the Certified Mail packages also included fictitious bonds and other documents that appear to promote frivolous argument theories.

28.     On July 2, 2019, the Kalmowitzes opened a J.P. Morgan Chase checking account number XXXXX6302 (JPMC #6302), titled to LMK TRUST. The signature cards show both Kalmowitzes as authorized signers for JPMC #6302 dated July 2 and July 11, 2019.  The same day he opened JPMC #6302, Larry Kalmowitz deposited the Treasury Check for the 2018 Form 1041 refund for LMK TRUST in the amount of $329,022.00 into that account. On December 21, 2019, Larry Kalmowitz deposited the Treasury Check for the 2017 Form 1041 refund for LMK TRUST in the amount of $2,416,079.00 into that same account.

29.     On November 18, 2019, the Kalmowitzes opened a checking account with Bank of America in the name of LMK ESTATE (BofA #9355). The signature card shows both Kalmowitzes as authorized signers for BofA #9355 dated November 27, 2019. Larry Kalmowitz deposited the Treasury Check for the 2018 Form 1041 refund for LMK ESTATE in the amount of $763,413.00 into the BofA #9355 account on November 20, 2019. He deposited the Treasury Check for the 2017 Form 1041 refund for LMK ESTATE in the amount of $5,662,720.00 into the BofA #9355 account on December 20, 2019.

30.     On November 19, 2019, the Kalmowitzes opened a checking account with BofA in the name of RAK ESTATE (BofA #6499). The signature card dated November 27, 2019 shows both Kalmowitzes as authorized signers for BofA #6499. On November 20, 2019, Rebecca Kalmowitz deposited the Treasury Check for the 2018 Form 1041 refund for RAK ESTATE in the amount of $800,002.00 into BofA #6499.

31.     On December 2, 2019, Rebecca Kalmowitz opened a BofA checking account (BofA #5338) in the name of HELPING HANDS MINISTRY SSM (HHM). The accounting opening document lists Rebecca Kalmowitz as "Exec. Director" and Larry Kalmowitz as "Managing Director" and both Kalmowitzes as authorized persons for the BofA #5338. Over the next few

weeks, the Kalmowitzes made substantial deposits into BofA #5338 from their other BofA accounts and their JPMC account:

| Date | Origin of Deposit | Amount |
|---|---|---|
| 12/31/19 | BofA #9355, Check #1002 | $50,000.00 |
| 12/31/19 | BofA #6499, Check #1003 | $75,000.00 |
| 1/15/20 | JPMC #6302, Check #181 | $500,000.00 |
| 1/16/20 | BofA #9355, Check #1008 | $4,400,000.00 |
| TOTAL | | $5,025,000.00 |

32.    On January 8, 2020, Larry Kalmowitz signed the withdrawal slip to purchase a cashier's check to Title Agency of Florida for $100,000.00 from BofA #5338 dated January 8, 2020. The memo line of the cashier's check read "15712 GULF BLVD-REDINGTON BEACH."

33.    On January 29, 2020, a wire transfer was sent to Gulf Water Title for approximately $4.4 million from BofA #5338. The originator to beneficiary instructions stated "PURCHASER HELPING HANDS MINISTRY SSM PROP ADDRESS 15712 GULF BLVD REDINGTON BEACH FL 33708."

34.    That same day, the Kalmowitzes signed the closing documents and provided their U.S. Passport Cards as identification to purchase 15712 Gulf Boulevard, Redington Beach, Florida 33708 for approximately $4.5 million. The closing documents were titled to CHC. The Kalmowitzes signed a Florida Limited Liability Company Affidavit as authorized signors of CHC as part of the closing package.

35.    Based on a review of these records, the records show that the $4,511,455.05 paid for 15712 Gulf Boulevard, Redington Beach, Florida came from the Treasury Check funds that were deposited in JPMC #6302, BOA #6499, and #9355 and subsequently transferred to BOA #5338.

## BASIS FOR FORFEITURE

36.    The Defendant Real Property, 15712 Gulf Boulevard, Redington Beach, Pinellas County, Florida is subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C) because it constitutes property involved in transactions or attempted transactions in violation of 18 U.S.C. § 1957 and/or is property traceable to violations of 18 U.S.C. §§ 1341 and 1343.

37.    The Kalmowitzes e-filed ten separate Form 1041s that all contained fraudulent information causing the Treasury to issue eight checks by USPS to a USPS P.O. box in Tyler, Texas.  All ten fraudulent Forms 1041 contained the same P.O. box as the return address, which caused the mailing of proceeds of the fraud scheme to be mailed by USPS to the P.O. box.  Of the ten fraudulent e-filed Form 1041s, the investigation has confirmed at least three of those were followed up by the Kalmowitzes by mailing via USPS hard copies of those forms and the supporting fraudulent 1099-OIDs that contained material misrepresentations.  There is a pending IRS archives check attempting to locate the hard copy records related to the other seven

Form 1041s.  The Kalmowitzes obtained the aforementioned illegal proceeds by way of mail fraud in violation of 18 U.S.C. § 1341.

38.     The internet protocol (IP) addresses used to submit all ten of the fraudulent Forms 1041 were also used by subjects of a related investigation. The Kalmowitzes both used the same IP addresses to file returns. The first three returns were filed from IP 74.192.114.158 which is known to be serviced by Suddenlink Communications and registered to Larry Kalmowitz at 730 Hampton Hill Road, Tyler, Texas 75701, the Kalmowitzes' former residence prior to foreclosure by Wells Fargo for non-payment. The next five returns were filed from IP 208.180.168.11 also serviced by Suddenlink Communications and registered to Staybridge Suites, 2759 McDonald Road, Tyler, Texas 75701. The final two returns, which were stopped from refunds being issued, were filed from a Charter Communications IP address. IP 35.136.166.14 is held by Charter Communications and is registered to Larry Kalmowitz. All 10 returns were also filed using TaxAct Inc.'s preparation software.  The Kalmowitzes obtained the aforementioned illegal proceeds by way of wire fraud in violation of 18 U.S.C. § 1343.

39.     Because the Defendant Real Property constitutes property purchased from monetary transactions by and through a financial institution affecting interstate commerce in criminally derived property having a value greater than $10,000, such property having been derived from specified

unlawful activities—that is, mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, respectively—it is forfeitable due to violations of 18 U.S.C. § 1957.

40.    The Defendant Real Property has not been seized.

41.    The government does not request authority from the Court to seize the above-listed real property at this time. Pursuant to 18 U.S.C. § 985(b)(1) and 985(c)(1), the government will instead do the following:

a.    Post notice of this action and a copy of the Complaint on the property;

b.    Serve notice of this action and a copy of this Complaint on the real property owner and any other person or entity who may claim interest in the real property; and

c.    File a *lis pendens* in county records of the real property's status as a defendant in this *in rem* action.

## POTENTIAL CLAIMANTS

42.    The potential claimants to the defendant property are:

Larry Mark Kalmowitz
15712 Gulf Boulevard
Redington Beach, Florida 33708

Rebecca Ann Kalmowitz
15712 Gulf Boulevard
Redington Beach, Florida 33708

Ken Burke, CPA
Clerk of the Circuit Court and Comptroller, Pinellas County, FL
315 Court Street
Clearwater, Florida 33756

## CLAIM FOR RELIEF

43.     The United States respectfully requests that the Court forfeit the

Defendant Real Property to the United States, award costs and

disbursements in this action to the United States, and order any other relief

that the Court deems appropriate.

Respectfully submitted,

DAMIEN M. DIGGS
UNITED STATES ATTORNEY

*/s/ Robert Austin Wells*
ROBERT AUSTIN WELLS
Assistant United States Attorney
Texas State Bar No. 24033327
110 N. College, Suite 700
Tyler, Texas  75702
Tel: (903) 590-1400
Fax: (903) 590-1439
robert.wells3@usdoj.gov

ATTORNEYS FOR THE UNITED
STATES

## VERIFICATION PURSUANT TO 28 U.S.C. § 1746

I, John R. Ornelas, Jr., hereby state that:

1.    I am a Special Agent with the Internal Revenue Service, Criminal Investigation.

2.    I have read this Complaint, and the information contained herein is true and correct to the best of my knowledge.

3.    The information contained in this Complaint comes from the official files and records of the United States and my investigation of the case.

I state and verify under penalty of perjury that the foregoing is true and correct.

John R. Ornelas, Jr., Special Agent
Internal Revenue Service
Criminal Investigation

Dated:    June 14th, 2023